**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re SUSAN T. MAUPIN,  ) | Case No. 07-61051-LYN |
| ) | |
| Debtor.  ) | |
| ) | |

**MEMORANDUM**

This matter comes before the court on an objection by the chapter 13 trustee to the confirmation of the chapter 13 plan of Susan T. Maupin ("the Debtor").  In addition, the court has, on its own motion, raised other objections to the debtor's plan.

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A)&(L).   This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P.

1

7052.

*Facts*

On June 8, 2007, the Debtor filed a petition initiating the above-styled chapter 13 case. On July 24, 2007, the Debtor filed an amended chapter 13 plan of reorganization. Paragraph 11 of the proposed plan contained 18 provisions not previously included in a chapter 13 plan by a debtor in the Lynchburg Division of the Western District of Virginia.

The chapter 13 trustee, in the normal course, filed a motion to dismiss or convert the case. At the hearing on confirmation, the chapter 13 trustee made supplemental objections to some of the provisions in paragraph 11.

*Discussion.*

The Bankruptcy Courts in the Western District of Virginia have executed an order directing chapter 13 debtors to use a Uniform Plan ("the Uniform Plan"). The Uniform Plan is less than five pages in length. As a preliminary matter, it must be noted that Bankruptcy Courts have the power to require the use of a uniform chapter 13 plan. A Bankruptcy Court's requirement that debtors use a form chapter 13 plan is a valid exercise of the Court's authority to regulate local practice and procedure because such a policy does not affect the substance rights of a chapter 13 debtor and is not inconsistent with the Bankruptcy Code or Bankruptcy Rules. See In re Walat, 89 B.R. 11 (E.D.Va. 1988).

There are reasons that the Uniform Plan is required. First, the Uniform Plan provides debtors and debtors' counsel with a template that, if properly employed, will result in a plan that has a high probability of confirmation. Second, and perhaps more importantly, the Uniform Plan allows creditors to review the plan in a more efficient manner by assuring them that their claims

will be treated as provided in a certain section depending on the nature and character of the claim. Efficiency is a valid purpose of a uniform plan. See Walat, 89 B.R. at 13 (Efficiency is a purpose that is consistent with the letter and spirit of the bankruptcy laws.).

As noted, paragraph 11 of the Debtor's plan contains 18 provisions not present in the Uniform Plan. The first provision, Paragraph 11A, provides that any secured creditor seeking post-petition fees or costs from the Debtor shall be required to file an application for compensation under Fed. R. Bankr. P. 2016. This paragraph is a paraphrased abstract of Rule 2016, as interpreted by the Debtor. As such it is a statement of the Debtor's interpretation of law which provides two possible effects. First, it increases the cost to creditors of monitoring the plan. Second, it provides for future additional and unnecessary litigation should a creditor's interpretation of Rule 2016 diverge from that of the Debtor. Indeed, a creditor who disagrees with the interpretation or who believes that it may be adversely effected by the Debtor's interpretation of Rule 2016 would be required to litigate the matter at the time of confirmation in order to avoid being bound by what it believes to be an incorrect interpretation of law. In either case, proposed Paragraph 11A unnecessarily increases the expected cost of administration of the plan without providing any benefit. If Rule 2016 is applicable to post-petition attempt to collect fees and costs, then it is applicable. If it is not, then it is not. There is no need to provide the debtor's interpretation of Rule 2016. Paragraph 11A is unnecessary and is likely, if applicable, to increase the costs of administration and litigation.

Further, if Paragraph 11A is an inaccurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not

inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

The second provision, Paragraph 11B, provides that "[c]onfirmation of this plan does not bar a party in interest from objecting to a claim which is not filed in accordance with Federal Bankruptcy Rules 3001 or 3002." This is also a statement of law. If neither the plan nor the order confirming the plan provide to the contrary, the rules concerning when a party may object to a claim are provided in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and opinions thereon, the Debtor's statement notwithstanding. Paragraph 11B is unnecessary and is likely, if applicable, to increase the costs of administration and litigation. As such it must be deleted from the plan before it may be confirmed.

Further, if Paragraph 11B is an inaccurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

The third provision, Paragraph 11C, provides that if a secured creditor's collateral is removed from the protection of the automatic stay, the creditor shall have 120 days after the modification of the stay to file a claim for an unsecured claim based on any deficiency. Paragraph 4C of the plan provides that creditors shall be allowed an unsecured claim for any deficiency if the claim is "timely filed". The Bankruptcy Judges of the Western District of Virginia have previously concluded that this language is sufficient to protect the interests of both debtors and creditors. If the Debtor believes that such a provision should be included in any

order granting relief from the stay, the court will consider requiring it at the hearing on the motion for relief from the stay.

Paragraph 11C also provides that any party, other than the moving creditor, who may claim an interest in, or a lien on, the property on which relief is granted, must be given notice by a party seeking relief from the stay on that property. Any party receiving relief from the stay will be required to pay all senior lienors and notice all junior lienors before foreclosing on the property that is the subject of motion for relief. If a non-moving party has an interest in, or a lien on, the collateral, then that party will necessarily receive notice of any act or attempt to foreclose on, or otherwise repossess, the collateral. Junior lienholders who are not paid from the proceeds of any sale will be required to "timely file" a deficiency claim at that time.

Paragraph 11D paraphrases Section 1306 which defines what property is property of the chapter 13 estate. It is a statement of the law found in Section 1306 of the Bankruptcy Code. As such, Paragraph 11D does not enhance either the efficiency of the administration of the case or enhance the rights of either debtors or creditors. Furthermore, even if it were a precise paraphrase of Section 1306, it does not address the effect of Section 1327(b), which provides that property of the estate revests in the debtor upon confirmation. Paragraph 11D is misleading and unnecessary. As such it must be deleted from the plan before it may be confirmed.

Further, if Paragraph 11D is an inaccurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

Paragraph 11E imposes a duty on creditors whose claims are secured by real property (1) to apply payments from the trustee based on pre-petition arrearages toward those pre-petition arrearages only; (2) to apply "direct mortgage payments, if any, paid by the trustee or by the debtor" to the month in which they were made under the plan; (3) to notify the trustee, the Debtor and her counsel of any changes in the interest rate; (4) to notify the trustee, the debtor and her counsel of any changes in the tax and insurance portion of the monthly payment; and (5) comply with Section 524(i).

The first requirement in Paragraph 11E requires secured creditors to apply payments made by the trustee based on pre-petition arrearages toward those arrearages. Paragraph 5 of the Uniform Plan provides for the payment of debts that extend beyond the term of the plan and claims secured by the debtor's residence. Paragraph 5A of the Uniform Plan provides for payments to be made by the debtor; Paragraph 5B of the Uniform Plan provides for payments to be made by the chapter 13 trustee based on arrearages.

Every chapter 13 case will end in one of three ways. A debtor may complete his or her required obligations under the plan, an event that will normally result in the entry of a discharge order. The debtor will then necessarily be current on all debts that extend beyond the term of the plan. Because the debtor will be current, all payments will have been made and will necessarily have been applied in accordance with the plan for purposes of the plan. The debtor will not owe any amounts toward either the pre-petition arrearages or the payments due prior to the completion of the plan. The provision is unnecessary.

If the case is dismissed or converted, then the order confirming the plan, and the plan, will be no longer be binding on the creditor. In these cases, the provision is unnecessary.

It could be argued that the issue could become relevant if the creditor files a motion for relief from the stay. But if the Debtor is current on both his or her payments to the trustee and his or her direct payments to the secured creditor, then the motion will be denied. If the Debtor believes that the motion is based on a misapplication of direct payments to an arrearage generating late fees on the direct payments, then the Debtor may make that argument when the motion is filed. And this court will liberally grant any reasonable request by the Debtor for an accounting from the creditor. The plan cannot be confirmed unless this provision is stricken.

The second requirement in Paragraph 11E would require secured creditors to post payments made by the trustee based on the normal contract payment to the month in which they are made. This will, in most if not all cases, alter the manner in which secured creditors post payments. There are also some problems with this provision. It appears to be an attempt, in part, by the debtor to avoid the accumulation of late fees in those instances where the debtor misses one monthly payment. It is, in effect, a request to reform the original contract with the secured creditor. Second, if the provision is applied literally, a payment made on or after the first day of the month that was three days late but within the grace period, could generate a late fee in the month for which it was due even if it fell within the grace period. The plan cannot be confirmed unless this provision is stricken.

The third and fourth provision in Paragraph 11E would require secured creditors to notify the trustee, the debtor and the debtor's counsel of any changes in the monthly contract payment based upon a change in the interest rate, imposed taxes or insurance. The trustee asked at the hearing that he only be notified if he is making the monthly contract payments. Why would this Court force notice upon a party that does not want it?

If a creditor does not inform the payor, whether it be the debtor or the trustee, then the creditor cannot expect to be paid the increased (or decreased) amount. The creditor will have an incentive to give such notice even without the provision in the plan.

Finally, Paragraph 11E would require secured creditors to comply with 11 U.S.C. § 524(i). This provision imposes a rule of law on creditors that is already imposed on them. It is unnecessary.

Paragraph 11F provides that all contractual provision regarding arbitration or alternative dispute resolution are rejected in connection with the administration of the chapter 13 case. There are a number of problems with this provision. First, the Debtor proposes to reject any and all arbitration clauses regardless of the circumstances under which the contract was formed. In Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 739 (5th Cir. 1996), cited by the Debtor, the Court provided a three-factor test for determining whether a contract could be divided into separate contracts: (1) the intent of the parties; (2) subject matter of the agreement; and (3) the conduct of the parties. The Debtor also cites In re White Mountain Mining Co., LLC., 403 F.3d 164 (4th Cir. 2005) in which the Court of Appeals held that the Bankruptcy Court below properly refused to enforce an arbitration clause to determine whether pre-petition cash advances were debt or equity.

The problem with a blanket provision in the plan that declares all arbitration clauses null and void is that the resolution of the issue of their severability hinges necessarily on the facts in each case. The Debtor in this case, and the debtor in each case in which this Paragraph 11F would be added, asks this Court to rule on the severability of all arbitration clauses without so much as a framed dispute, a motion, a notice, briefs, a hearing, or a discussion of the facts. This

the Court cannot do.

Further, before a debtor may reject a contract, the debtor must demonstrate that the contract is executory, that is, simply stated, there must be a different set of assets and claims if the debtor accepts the contract than if the debtor rejects the contract. It is not clear that the rejection of an arbitration clause would necessarily result in a different set of assets (property of the estate) and claims against the estate. The resolution of these issues can be different given the facts of each case. Because the proposed paragraph 11F is not necessary and because it would engender uncertainty and increase the cost of prosecuting and administering this case, the plan cannot be confirmed until it is deleted.

Counsel for the Debtor asserts that he is, in part, attempting to permit this Court to retain jurisdiction over actions asserting violation of the automatic stay, to keep them from being resolved through an arbitration hearing. This Court has never permitted an action for violation of the stay to be resolved through arbitration, and has, in fact, never even received such a request. The time to consider such a motion is when one is made.

The Debtor also argues that the provisions in Paragraph 11F are necessary to prevent creditors from "pull[ing] a fast one on the court and ship[ping] it off to somebody else to make a decision." The Court assumes that the debtor would necessarily be made aware of any attempt to conduct an arbitration hearing regarding bankruptcy matter. It would be simple enough at that time for the Debtor to bring the issue before this court.

Paragraph 11G is similar to Paragraph 11F. It must also be deleted before the plan may be confirmed.

Paragraph 11H provides that confirmation of the plan constitutes a finding that the debtor

9

and the chapter 13 trustee do not waive, but rather retain both pre-petition and post-petition claims that could be raised under state and federal consumer statutes and state and federal common law. As such, it requires this Court to render a blanket advisory opinion regarding waiver in matters that have not yet been joined. This the Court cannot do.

Paragraph 11I provides that upon the discharge of a debt secured by property for which a certificate of title is in the possession of the secured creditor, the secured creditor shall, within thirty days of the entry of the discharge order, execute a release of its security interest on the title and deliver the same to the debtor. Paragraph 11I also provides that all such secured creditors consent to the exclusive jurisdiction of the Bankruptcy Court over any dispute arising from this requirement.

Again, this constitutes a restatement, paraphrase, and perhaps a modification, of state law. To the extent that it is a restatement, it is unnecessary. To the extent that it is a paraphrase, it could engender unnecessary litigation. To the extent that it is a modification, it is improper.

Paragraph 11J describes the position that the debtor will take if a creditor assigns a claim after filing a proof of claim and the assignee fails to file "evidence of the terms of the transfer". The Debtor will assert that assignment shall be deemed void and that assignee shall be deemed to be only an agent of the assignor.

This provision is not binding on any party even if included in the plan. It is merely a statement of the Debtor's intended reaction to a certain scenario. It is unnecessary and must be deleted.

Paragraph 11K provides that if a creditor fails to object to the plan or accepts payments under the plan, then it is deemed to have waived its right to enforce any arbitration agreement and

is further deemed to consent to the removal of any arbitration clause from the contract. This paragraph cannot be included in the plan for the same reasons that Paragraphs 11F and 11G cannot be included in the plan.

Paragraph 11L is a paraphrase of the law concerning the filing of, and objections to, proofs of claims. As such, and as noted above, it adds nothing to the plan and must be deleted.

Further, if Paragraph 11L is an accurate statement of law, then it is unnecessary. If it is not an accurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

Paragraph 11M is a paraphrase of a statement of law concerning the effect of the surrender of certain property that secures a claim of a creditor the value of which is less than the amount of the claim. As a restatement of law, it is unnecessary. Further, if Paragraph 11M is an accurate statement of law, then it is unnecessary. If it is not an accurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

Paragraph 11N restates, or quotes Section 362(a) of the Bankruptcy Code. It is unnecessary. Further, it could create confusion over whether other subsections of Section 362 are applicable. For instance, should a creditor be denied relief from the stay because his or her claim is provided for in a confirmed plan? Would Section 362(c) or 362(d) apply to this Paragraph

11N? Not only is the paragraph unnecessary, it would quite likely cause unnecessary litigation over these questions.

Further, to the extent that Paragraph 11N is not an accurate statement of law, it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. <u>See</u> 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

Paragraph 11O provides that confirmation of the plan shall constitute a finding by the Court that the debtor has fully complied with all of the required pre-confirmation obligations imposed by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and all Administrative Orders and any other procedures related to the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This Court is not willing to give the Debtor a blanket release in matters that have not been brought before the Court.

Paragraph 11P requires secured creditors to file a proof of claim in order to receive adequate protection payments. This is a statement of law and is not necessary. If it is not an accurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. <u>See</u> 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

Paragraph 11Q provides for the payment of attorneys fees before other claims. The Debtor has agreed that this is improper.

Paragraph 11R provides the date on which the debtor will resume regular direct payment

to creditors that are being paid arrearages by the trustee under Paragraphs 5A and 6B. This date may be calculated from information included in the plan. It is not necessary to include a date that may conflict with the date that may be calculated.

Counsel for the Debtor argues that many of the provisions in the Debtor's Paragraph 11 are made necessary by the fact that entities are intentionally violating the discharge injunction by "buying discharged debt" and attempting to collect it from the debtor after the debt has been discharged and the case has been closed. Debtors are provided with a way to deal with these scenarios as they arise. Any such act would constitute a violation of the discharge injunction under 11 U.S.C. § 524(a)(2). Violations of the discharge injunction may be sanctioned through a proceeding for civil contempt. See, Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy, "Effect of Discharge", 524.02[2][c] (15th Ed 2007) (And cases cited therein.)

Counsel further asserts that there are scenarios under which secured creditors are requiring a debtor to pay discharged debts before the creditor will agree to refinance the debtor's residence. He further asserts that some debtors will pay the discharged debt without contacting a bankruptcy attorney. Counsel asserts that many of the provisions are placed in the plan in order to ensure that these acts of contempt are brought to the attention of the Court. But adding these provisions to the plan will not bring individual acts of contempt before the Court after a case has been closed. If counsel for the Debtor is concerned that his client may not inform him when the discharge injunction is violated, then adding a provision in the plan will not solve the problem. The solution is for counsel to make certain that debtors who receive their discharge understand the benefits that accrue from the entry of the discharge order.

Counsel also seems to be concerned that there are, or may be, caps on violations of other

laws prohibiting certain creditor behavior. The plan is not the place to resolve his concerns. First, this Court is not empowered to amend laws enacted by the United States Congress or individual state legislatures. Second, if a creditor violates the discharge injunction, the Debtor may seek redress before this Court. This Court is not aware of any statutory limitation on damages that may be awarded for a violation of the discharge injunction. And if the Debtor has evidence that any creditor is knowingly purchasing a discharged debt for the specific purpose of attempting to collect that debt, then this Court will be quite receptive to hearing such evidence.

Counsel for the debtor argues that the provisions in Paragraph 11 are simply an "attempt to protect [his] clients from defenses" that creditors will raise when the Debtor issues certain arise. To the extent that counsel is asking this court to rule on defenses to his motions before those defenses are raised, even before his motions are made, he is asking this Court to adjudicate matters that are not yet before the court. He is asking this Court to render advisory opinions. This, of course, is something that this Court may not do.

Paragraph 11 was added to the Uniform Plan so that a debtor might add provisions that are peculiar to the debtor's financial situation, not so that counsel could substitute his Uniform Plan for that of the Courts.

The Debtor's plan cannot be confirmed until all of the provisions are removed from Paragraph 11. The objection to the confirmation of the Debtor's chapter 13 plan will be sustained for the foregoing reasons.

## **ORDER**

For the foregoing reasons, the objection to the confirmation of the Debtor's chapter 13 plan shall be, and hereby is, sustained.

Upon entry of this Memorandum the Clerk shall forward a copy to Marshall M. Slayton, Esq., counsel for the debtor, and Herbert L. Beskin, Esq., chapter 13 trustee.

Entered on this  1st  day of November, 2007.

_____
William E. Anderson
United States Bankruptcy Judge