**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re SUSAN T. MAUPIN, | ) | Case No. 07-61051-LYN |
| | ) | |
| Debtor. | ) | |
| | ) | |

## **MEMORANDUM**

This matter comes before the court on an objection by the chapter 13 trustee to the

confirmation of the chapter 13 plan of Susan T. Maupin ("the Debtor").  In addition, the court

has, on its own motion, raised other objections to the debtor's plan.

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This

proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A)&(L).   This Court may enter a final

order. This memorandum shall constitute the Court's findings of fact and conclusions of law as

required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P.

7052.

### *Facts*

On June 8, 2007, the Debtor filed a petition initiating the above-styled chapter 13 case.

On July 24, 2007, the Debtor filed an amended chapter 13 plan of reorganization.  Paragraph 11

of the proposed plan contained 18 provisions not previously included in a chapter 13 plan by a

debtor in the Lynchburg Division of the Western District of Virginia.

The chapter 13 trustee, in the normal course, filed a motion to dismiss or convert the

case.  At the hearing on confirmation, the chapter13 trustee made supplemental objections to

some of the provisions in paragraph 11.

### *Discussion.*

The Bankruptcy Courts in the Western District of Virginia have executed an order

directing chapter 13 debtors to use a Uniform Plan ("the Uniform Plan").   The Uniform Plan  is

less than five pages in length.  As a preliminary matter, it must be noted that Bankruptcy Courts

have the power to require the use of a uniform chapter 13 plan.   A Bankruptcy Court's

requirement that debtors use a form chapter 13 plan is a valid exercise of the Court's authority to

regulate local practice and procedure because such a policy does not affect the substance rights

of a chapter 13 debtor and is not inconsistent with the Bankruptcy Code or Bankruptcy Rules.

See In re Walat, 89 B.R. 11 (E.D.Va. 1988).

There are reasons that the Uniform Plan is required.   First, the Uniform Plan provides

debtors and debtors' counsel with a template that, if properly employed, will result in a plan that

has a high probability of confirmation.  Second, and perhaps more importantly, the Uniform Plan

allows creditors to review the plan in a more efficient manner by assuring them that their claims

will be treated as provided in a certain section depending on the nature and character of the

claim.  Efficiency is a valid purpose of a uniform plan.  See Walat, 89 B.R. at 13 (Efficiency is a

purpose that is consistent with the letter and spirit of the bankruptcy laws.).

As noted, paragraph 11 of the Debtor's plan contains 18 provisions not present in the

Uniform Plan.  The first provision, Paragraph 11A, provides that any secured creditor seeking

post-petition fees or costs from the Debtor shall be required to file an application for

compensation under Fed. R. Bankr. P. 2016.   This paragraph is a paraphrased abstract of Rule

2016, as interpreted by the Debtor.  As such it is a statement of the Debtor's interpretation of law

which provides two possible effects.  First, it increases the cost to creditors of monitoring the

plan.  Second, it provides for future additional and unnecessary litigation should a creditor's

interpretation of Rule 2016 diverge from that of the Debtor.  Indeed, a creditor who disagrees

with the interpretation or who believes that it may be adversely effected by the Debtor's

interpretation of Rule 2016 would be required to litigate the matter at the time of confirmation in

order to avoid being bound by what it believes to be an incorrect interpretation of law.  In either

case, proposed Paragraph 11A unnecessarily increases the expected cost of administration of the

plan without providing any benefit.   If Rule 2016 is applicable to post-petition attempt to collect

fees and costs, then it is applicable.  If it is not, then it is not.  There is no need to provide the

debtor's interpretation of Rule 2016.  Paragraph 11A is unnecessary and is likely, if applicable,

to increase the costs of administration and litigation.

Further, if Paragraph 11A is an inaccurate statement of law, then it violates the implied

statutory prohibition against including any provision that is not consistent with the Bankruptcy

Code.  See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not

inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

The second provision, Paragraph 11B, provides that "[c]onfirmation of this plan does not bar a party in interest from objecting to a claim which is not filed in accordance with Federal Bankruptcy Rules 3001 or 3002." This is also a statement of law. If neither the plan nor the order confirming the plan provide to the contrary, the rules concerning when a party may object to a claim are provided in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and opinions thereon, the Debtor's statement notwithstanding. Paragraph 11B is unnecessary and is likely, if applicable, to increase the costs of administration and litigation. As such it must be deleted from the plan before it may be confirmed.

Further, if Paragraph 11B is an inaccurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this title."). As such it must be deleted from the plan before it may be confirmed.

The third provision, Paragraph 11C, provides that if a secured creditor's collateral is removed from the protection of the automatic stay, the creditor shall have 120 days after the modification of the stay to file a claim for an unsecured claim based on any deficiency. Paragraph 4C of the plan provides that creditors shall be allowed an unsecured claim for any deficiency if the claim is "timely filed". The Bankruptcy Judges of the Western District of Virginia have previously concluded that this language is sufficient to protect the interests of both debtors and creditors. If the Debtor believes that such a provision should be included in any

4

order granting relief from the stay, the court will consider requiring it at the hearing on the

motion for relief from the stay.

Paragraph 11C also provides that any party, other than the moving creditor, who may

claim an interest in, or a lien on, the property on which relief is granted, must be given notice by

a party seeking relief from the stay on that property.  Any party receiving relief from the stay

will be required to pay all senior lienors and notice all junior lienors before foreclosing on the

property that is the subject of motion for relief.  If a non-moving party has an interest in, or a lien

on, the collateral, then that party will necessarily receive notice of any act or attempt to foreclose

on, or otherwise repossess, the collateral.  Junior lienholders who are not paid from the proceeds

of any sale will be required to "timely file" a deficiency claim at that time.

Paragraph 11D paraphrases Section 1306 which defines what property is property of the

chapter 13 estate.   It is a statement of the law found in Section 1306 of the Bankruptcy Code.

As such, Paragraph 11D does not enhance either the efficiency of the administration of the case

or enhance the rights of either debtors or creditors.  Furthermore, even if it were a precise

paraphrase of Section 1306, it does not address the effect of Section 1327(b), which provides

that property of the estate revests in the debtor upon confirmation. Paragraph 11D is misleading

and unnecessary.  As such it must be deleted from the plan before it may be confirmed.

Further, if Paragraph 11D is an inaccurate statement of law, then it violates the implied

statutory prohibition against including any provision that is not consistent with the Bankruptcy

Code.  See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate provision not

inconsistent with this title.").  As such it must be deleted from the plan before it may be

confirmed.

5

Paragraph 11E imposes a duty on creditors whose claims are secured by real property (1) to apply payments from the trustee based on pre-petition arrearages toward those pre-petition arrearages only; (2) to apply "direct mortgage payments, if any, paid by the trustee or by the debtor" to the month in which they were made under the plan; (3) to notify the trustee, the Debtor and her counsel of any changes in the interest rate; (4) to notify the trustee, the debtor and her counsel of any changes in the tax and insurance portion of the monthly payment; and (5) comply with Section 524(i).

The first requirement in Paragraph 11E requires secured creditors to apply payments made by the trustee based on pre-petition arrearages toward those arrearages. Paragraph 5 of the Uniform Plan provides for the payment of debts that extend beyond the term of the plan and claims secured by the debtor's residence. Paragraph 5A of the Uniform Plan provides for payments to be made by the debtor; Paragraph 5B of the Uniform Plan provides for payments to be made by the chapter 13 trustee based on arrearages.

Every chapter 13 case will end in one of three ways. A debtor may complete his or her required obligations under the plan, an event that will normally result in the entry of a discharge order. The debtor will then necessarily be current on all debts that extend beyond the term of the plan. Because the debtor will be current, all payments will have been made and will necessarily have been applied in accordance with the plan for purposes of the plan. The debtor will not owe any amounts toward either the pre-petition arrearages or the payments due prior to the completion of the plan. The provision is unnecessary.

If the case is dismissed or converted, then the order confirming the plan, and the plan, will be no longer be binding on the creditor. In these cases, the provision is unnecessary.

It could be argued that the issue could become relevant if the creditor files a motion for relief from the stay.  But if the Debtor is current on both his or her payments to the trustee and his or her direct payments to the secured creditor, then the motion will be denied.  If the Debtor believes that the motion is based on a misapplication of direct payments to an arrearage generating late fees on the direct payments, then the Debtor may make that argument when the motion is filed.  And this court will liberally grant any reasonable request by the Debtor for an accounting from the creditor.   The plan cannot be confirmed unless this provision is stricken.

The second requirement in Paragraph 11E would require secured creditors to post payments made by the trustee based on the normal contract payment to the month in which they are made.  This will, in most if not all cases, alter the manner in which secured creditors post payments.  There are also some problems with this provision.  It appears to be an attempt, in part, by the debtor to avoid the accumulation of late fees in those instances where the debtor misses one monthly payment.  It is, in effect, a request to reform the original contract with the secured creditor.   Second, if the provision is applied literally, a payment made on or after the first day of the month that was three days late but within the grace period, could generate a late fee in the month for which it was due even if it fell within the grace period.  The plan cannot be confirmed unless this provision is stricken.

The third and fourth provision in Paragraph 11E would require secured creditors to notify the trustee, the debtor and the debtor's counsel of any changes in the monthly contract payment based upon a change in the interest rate, imposed taxes or insurance.  The trustee asked at the hearing that he only be notified if he is making the monthly contract payments.  Why would this Court force notice upon a party that does not want it?

7

If a creditor does not inform the payor, whether it be the debtor or the trustee, then the

creditor cannot expect to be paid the increased (or decreased) amount.  The creditor will have an

incentive to give such notice even without the provision in the plan.

Finally, Paragraph 11E would require secured creditors to comply with 11 U.S.C. § 524(i).

This provision imposes a rule of law on creditors that is already imposed on them.  It is

unnecessary.

Paragraph 11F provides that all contractual provision regarding arbitration or alternative

dispute resolution are rejected in connection with the administration of the chapter 13 case.  There

are a number of problems with this provision.  First, the Debtor proposes to reject any and all

arbitration clauses regardless of the circumstances under which the contract was formed.  In

Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 739 (5th Cir. 1996), cited by

the Debtor, the Court provided a three-factor test for determining whether a contract could be

divided into separate contracts: (1) the intent of the parties; (2) subject matter of the agreement;

and (3) the conduct of the parties.   The Debtor also cites In re White Mountain Mining Co.,

LLC., 403 F.3d 164 (4th Cir. 2005) in which the Court of Appeals held that the Bankruptcy Court

below properly refused to enforce an arbitration clause to determine whether pre-petition cash

advances were debt or equity.

The problem with a blanket provision in the plan that declares all arbitration clauses null

and void is that the resolution of the issue of their severability hinges necessarily on the facts in

each case.  The Debtor in this case, and the debtor in each case in which this Paragraph 11F

would be added, asks this Court to rule on the severability of all arbitration clauses without so

much as a framed dispute, a motion, a notice, briefs, a hearing, or a discussion of the facts.   This

the Court cannot do.

Further, before a debtor may reject a contract, the debtor must demonstrate that the contract is executory, that is, simply stated, there must be a different set of assets and claims if the debtor accepts the contract than if the debtor rejects the contract. It is not clear that the rejection of an arbitration clause would necessarily result in a different set of assets (property of the estate) and claims against the estate. The resolution of these issues can be different given the facts of each case. Because the proposed paragraph 11F is not necessary and because it would engender uncertainty and increase the cost of prosecuting and administering this case, the plan cannot be confirmed until it is deleted.

Counsel for the Debtor asserts that he is, in part, attempting to permit this Court to retain jurisdiction over actions asserting violation of the automatic stay, to keep them from being resolved through an arbitration hearing. This Court has never permitted an action for violation of the stay to be resolved through arbitration, and has, in fact, never even received such a request. The time to consider such a motion is when one is made.

The Debtor also argues that the provisions in Paragraph 11F are necessary to prevent creditors from "pull[ing] a fast one on the court and ship[ping] it off to somebody else to make a decision." The Court assumes that the debtor would necessarily be made aware of any attempt to conduct an arbitration hearing regarding bankruptcy matter. It would be simple enough at that time for the Debtor to bring the issue before this court.

Paragraph 11G is similar to Paragraph 11F. It must also be deleted before the plan may be confirmed.

Paragraph 11H provides that confirmation of the plan constitutes a finding that the debtor

and the chapter 13 trustee do not waive, but rather retain both pre-petition and post-petition

claims that could be raised under state and federal consumer statutes and state and federal

common law.  As such, it requires this Court to render a blanket advisory opinion regarding

waiver in matters that have not yet been joined.   This the Court cannot do.

Paragraph 11I provides that upon the discharge of a debt secured by property for which a

certificate of title is in the possession of the secured creditor, the secured creditor shall, within

thirty days of the entry of the discharge order, execute a release of its security interest on the title

and deliver the same to the debtor.   Paragraph 11I also provides that all such secured creditors

consent to the exclusive jurisdiction of the Bankruptcy Court over any dispute arising from this

requirement.

Again, this constitutes a restatement, paraphrase, and perhaps a modification, of state law.

To the extent that it is a restatement, it is unnecessary.  To the extent that it is a paraphrase, it

could engender unnecessary litigation.  To the extent that it is a modification, it is improper.

Paragraph 11J describes the position that the debtor will take if a creditor assigns a claim

after filing a proof of claim and the assignee fails to file "evidence of the terms of the transfer".

The Debtor will assert that assignment shall be deemed void and that assignee shall be deemed to

be only an agent of the assignor.

This provision is not binding on any party even if included in the plan.  It is merely a

statement of the Debtor's intended reaction to a certain scenario.  It is unnecessary and must be

deleted.

Paragraph 11K provides that if a creditor fails to object to the plan or accepts payments

under the plan, then it is deemed to have waived its right to enforce any arbitration agreement and

is further deemed to consent to the removal of any arbitration clause from the contract.   This

paragraph cannot be included in the plan for the same reasons that Paragraphs 11F and 11G

cannot be included in the plan.

Paragraph 11L is a paraphrase of the law concerning the filing of, and objections to,

proofs of claims.  As such, and as noted above, it adds nothing to the plan and must be deleted.

Further, if Paragraph 11L is an accurate statement of law, then it is unnecessary.   If it is

not an accurate statement of law, then it violates the implied statutory prohibition against

including any provision that is not consistent with the Bankruptcy Code.  See 11 U.S.C. §

1322(b)(11) (The plan may include "any other appropriate provision not inconsistent with this

title.").  As such it must be deleted from the plan before it may be confirmed.

Paragraph 11M is a paraphrase of a statement of law concerning the effect of the surrender

of certain property that secures a claim of a creditor the value of which is less than the amount of

the claim.   As a restatement of law, it is unnecessary.        Further, if Paragraph 11M is an

accurate statement of law, then it is unnecessary.   If it is not an accurate statement of law, then it

violates the implied statutory prohibition against including any provision that is not consistent

with the Bankruptcy Code.  See 11 U.S.C. § 1322(b)(11) (The plan may include "any other

appropriate provision not inconsistent with this title.").  As such it must be deleted from the plan

before it may be confirmed.

Paragraph 11N restates, or quotes Section 362(a) of the Bankruptcy Code.  It is

unnecessary.  Further, it could create confusion over whether other subsections of Section 362 are

applicable.   For instance, should a creditor be denied relief from the stay because his or her claim

is provided for in a confirmed plan?  Would Section 362(c) or 362(d) apply to this Paragraph

11N?  Not only is the paragraph unnecessary, it would quite likely cause unnecessary litigation

over these questions.

Further, to the extent that Paragraph 11N is not an accurate statement of law, it violates

the implied statutory prohibition against including any provision that is not consistent with the

Bankruptcy Code.  See 11 U.S.C. § 1322(b)(11) (The plan may include "any other appropriate

provision not inconsistent with this title.").  As such it must be deleted from the plan before it

may be confirmed.

Paragraph 11O provides that confirmation of the plan shall constitute a finding by the

Court that the debtor has fully complied with all of the required pre-confirmation obligations

imposed by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and all

Administrative Orders and any other procedures related to the implementation of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005.  This Court is not willing to give the

Debtor a blanket release in matters that have not been brought before the Court.

Paragraph 11P requires secured creditors to file a proof of claim in order to receive

adequate protection payments.  This is a statement of law and is not necessary.  If it is not an

accurate statement of law, then it violates the implied statutory prohibition against including any

provision that is not consistent with the Bankruptcy Code.  See 11 U.S.C. § 1322(b)(11) (The plan

may include "any other appropriate provision not inconsistent with this title.").  As such it must

be deleted from the plan before it may be confirmed.

Paragraph 11Q provides for the payment of attorneys fees before other claims.  The

Debtor has agreed that this is improper.

Paragraph 11R provides the date on which the debtor will resume regular direct payment

to creditors that are being paid arrearages by the trustee under Paragraphs 5A and 6B.  This date

may be calculated from information included in the plan.  It is not necessary to include a date that

may conflict with the date that may be calculated.

Counsel for the Debtor argues that many of the provisions in the Debtor's Paragraph 11

are made necessary by the fact that entities are intentionally violating the discharge injunction by

"buying discharged debt" and attempting to collect it from the debtor after the debt has been

discharged and the case has been closed.  Debtors are provided with a way to deal with these

scenarios as they arise.  Any such act would constitute a violation of the discharge injunction

under 11 U.S.C. § 524(a)(2).  Violations of the discharge injunction may be sanctioned through a

proceeding for civil contempt.  See, Alan N.  Resnick & Henry J.  Sommer, 4 Collier on

Bankruptcy,  "Effect of Discharge", 524.02[2][c] (15th Ed 2007) (And cases cited therein.)

Counsel further asserts that there are scenarios under which secured creditors are requiring

a debtor to pay discharged debts before the creditor will agree to refinance the debtor's residence.

He further asserts that some debtors will pay the discharged debt without contacting a bankruptcy

attorney.  Counsel asserts that many of the provisions are placed in the plan in order to ensure that

these acts of contempt are brought to the attention of the Court.  But adding these provisions to

the plan will not bring individual acts of contempt before the Court after a case has been closed.

If counsel for the Debtor is concerned that his client may not inform him when the discharge

injunction is violated, then adding a provision in the plan will not solve the problem.  The

solution is for counsel to make certain that debtors who receive their discharge understand the

benefits that accrue from the entry of the discharge order.

Counsel also seems to be concerned that there are, or may be, caps on violations of other

13

laws prohibiting certain creditor behavior.   The plan is not the place to resolve his concerns.

First, this Court is not empowered to amend laws enacted by the United States Congress or

individual state legislatures.   Second, if a creditor violates the discharge injunction, the Debtor

may seek redress before this Court.   This Court is not aware of any statutory limitation on

damages that may be awarded for a violation of the discharge injunction.   And if the Debtor has

evidence that any creditor is knowingly purchasing a discharged debt for the specific purpose of

attempting to collect that debt, then this Court will be quite receptive to hearing such evidence.

Counsel for the debtor argues that the provisions in Paragraph 11 are simply an "attempt

to protect [his] clients from defenses" that creditors will raise when the Debtor issues certain

arise.  To the extent that counsel is asking this court to rule on defenses to his motions before

those defenses are raised, even before his motions are made, he is asking this Court to adjudicate

matters that are not yet before the court.   He is asking this Court to render advisory opinions.

This, of course, is something that this Court may not do.

Paragraph 11 was added to the Uniform Plan so that a debtor might add provisions that are

peculiar to the debtor's financial situation, not so that counsel could substitute his Uniform Plan

for that of the Courts.

The Debtor's plan cannot be confirmed until all of the provisions are removed from

Paragraph 11.  The objection to the confirmation of the Debtor's chapter 13 plan will be

sustained for the foregoing reasons.

## **ORDER**

For the foregoing reasons, the objection to the confirmation of the Debtor's chapter 13

plan shall be, and hereby is, sustained.

14

Upon entry of this Memorandum the Clerk shall forward a copy to Marshall M. Slayton,

Esq., counsel for the debtor, and Herbert L. Beskin, Esq., chapter 13 trustee.

Entered on this __1st__ day of November, 2007.

William E. Anderson
United States Bankruptcy Judge

15